Robert C. MATHEWS and Grace E. Mathews, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3661.

United States District Court
D. Idaho, S. D.

Dec. 21, 1962.

Myron E. Anderson, Boise, Idaho, for plaintiffs.

Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, Louis F. Obordorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, Richard W. Perkins, Attorneys Department of Justice, Washington, D. C., for defendant.

CHASE A. CLARK, Chief Judge.

This is an action brought by plaintiffs, Robert C. Mathews and Grace E. Mathews, husband and wife, for refund of Federal income taxes, allegedly erroneously paid for the years 1957 and 1958.

This court has jurisdiction under 28 U.S.C. §§ 1340, 1346(a) and 1402(a).

The plaintiff is a journeyman electrician and is a member of Local Union No. 291, International Brotherhood of Electrical Workers, Boise, Idaho, which furnishes electricians for contractors and local firms in the fourteen counties of southwestern Idaho and southeastern Oregon, and the Union negotiates contracts with the contractors and firms.

Plaintiff and his family made their home at Nampa, Idaho, until June, 1951, when they moved to Boise, Idaho. Following the usual practice he was assigned to available electrical employment by the local union office. In February, 1956, he was assigned to a job with Morrison-Knudsen Company and began employment with them on February 2, 1956, at its construction site at Brownlee Dam on the Snake River. There was no suitable place for him to live with his family at Brownlee so he moved his family to Nampa to the dwelling of Mrs. Mathews' parents under an expense paying arrangement. The company had barracks for the men at Brownlee and he stayed there for about a month, spending weekends with his family in Nampa. About March 1st he moved a trailer house which he owned to Richland, Oregon, about twenty-two miles from his job. His family stayed with him at this trailer house some of the time, but spent a good deal of time in Nampa. In April, 1956, he moved the trailer to the new trailer camp at Brownlee and went to his Nampa home on weekends.

Morrison-Knudsen's contract with the International Brotherhood of Electrical Workers expired and Plaintiff's employment was terminated on February 12, 1957. Thereupon he returned to Nampa and was placed on the referral list at union headquarters in Boise. He was

then assigned to a job at Denver, Colorado, where he worked until called back to Boise by the local union some three weeks later, work being available in the Boise area. Plaintiff was then assigned to Gem State Electric Company and went to work about March 11, 1957, at Brownlee Dam where he was employed for a year, or until March 8th or 9th, 1958, when Gem State's contract with Morrison-Knudsen, the prime contractor, expired and his employment was terminated.

Plaintiff was then assigned by the union to Kehne-Crabtree Electric Company, which had a sub-contract to do electrical work at Brownlee, where he was employed for the remainder of 1958 and up until June of 1959 when the same contractor sent him to Pierre, South Dakota, where he worked for about three weeks and then returned to Brownlee, where he continued his employment until the electrical work on the dam was completed.

This suit for refund is based on the premise that the taxpayer, Robert C. Mathews, was "away from home" within the meaning of 26 U.S.C.A. § 162(a), Internal Revenue Code (1954) during the time of his employment at Brownlee.

The taxpayer and the Government agree that the amounts received by taxpayer as "subsistence" should be included in taxpayer's gross income. The question here is whether or not expenditures made by taxpayer for food and lodging are deductible items, as traveling expenses incurred while "away from home", within the meaning of the statutes.

Title 26 U.S.C.A. § 162 provides:

"Trade or business expenses:

"(a) In general.—

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) * * *

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *."

Section 62, 26 U.S.C.A. in defining adjusted gross income, provides:

"For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:

"(1) * * *

"(2) Trade and business deductions of employees.—

"(A) Reimbursed expenses.—The deduction allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

"(B) Expenses for travel away from home.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

"(C) Transportation expenses.— The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee."

In the case of Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203, the Court has set forth three prerequisites for claiming travel expenses: (1) Expenses must be reasonable and necessary; (2) they must be incurred while "away from home" and (3) there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer.

Prerequisites (1) and (3) have been met in this case and the court is only concerned with the "away from home" requirement of number two.

There are numerous decisions involving this question, but as the Supreme Court said in Peurifoy v. Commissioner, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30, quoting 27 T.C. at 157: "[E]ach case must be decided upon the basis of its own facts and circumstances."

The Court of Appeals for the Ninth Circuit in Harvey v. Commissioner, 283 F.2d 491, held the taxpayer to be "away from home" and said, "An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station."

The more recent case of Wright v. Hartsell, 305 F.2d 221, decided by the Ninth Circuit, was an appeal from this district and in that case the court said, in a footnote at page 224:

"More precisely, the distinction has customarily been drawn between 'temporary' and 'indefinite employment' and in Harvey we drew the distinction between 'substantially long' and 'substantially short' employment. The Harvey decision did not reject the distinction which had been developed by other courts, but rather rejected the restrictive method in which it had been applied. Other courts have engaged in the practice of basing the deductibility question on whether the taxpayer was away from home for an 'indefinite' period of time, thus assuming that the taxpayer should be expected to change his residence unless he could foresee the termination of his job within a reasonably short period of time. In Harvey, we held that the taxpayer should not be expected to change his residence unless he expects to be employed elsewhere for a reasonably long period of time."

The Government contends that the present case is clearly distinguishable from the Harvey case. With that this Court is unable to agree. The Government says the taxpayer here "from the inception of his employment could reasonably expect this employment to continue for a period of two or three years". The fact is that the taxpayer knew the project might last that long, but as far as his own employment by Morrison-Knudsen was concerned, other factors entered in, such as that which occurred —expiration of Morrison-Knudsen's agreement with Local 291. When this happened the taxpayer became available for employment by any employer requiring his type of service in the area served by Local 291, some fourteen counties in southwestern Idaho and southeastern Oregon, and the taxpayer was referred to jobs through the union hiring hall.

The evidence shows that when such a union man's employment terminates he goes to his union office and registers for employment. Then when contractors working within the union's jurisdiction need men they call the union business agent and he dispatches the men to the various jobs. A particular employer may use such men on any project they have within the area served by this local. Sometimes the Union finds it necessary to remove a man from one job and put him on another in order to supply employers with men who can do the job. Likewise, an employer can work a man anywhere that he has a job as long as he pays the wages and observes the conditions of the agreement with the local union. Thus, it can be said that the Union controls its members.

This court feels that these facts make this case closely analogous to the Harvey case, supra. Thus, even the fact that the taxpayer Mathews' family lived with him at the trailer house for a period does not change the nature of his employment at Brownlee from that of temporary. The taxpayer's tax home was still Boise, Idaho.

For these reasons the Court feels that the taxpayer is entitled to a refund in the amounts to be determined as the Pre-trial Order herein provides that in the event a recovery be allowed Plaintiffs, entry of judgment should be withheld for a reasonable time to allow the parties to compute the amount thereof.