**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-104

UNITED STATES TAX COURT

MELANIE L. THOMAS-KOZAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 802-12S.                    Filed November 10, 2014.

<u>Norman D. McKellar</u>, for petitioner.

<u>John R. Bampfield</u> and <u>William W. Kiessling</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's 2008 and 2009 Federal income tax of $7,175 and $7,659, respectively, and accuracy-related penalties under section 6662(a) of $1,435 and $1,532, respectively. After concessions,[2] the issues for decision are:

(1) whether petitioner is entitled to a deduction for medical expenses for 2008 in an amount greater than that allowed by respondent;

(2) whether petitioner is entitled to a charitable contribution deduction for 2009 in an amount greater than that allowed by respondent;

---

[2]The notice of deficiency disallowed deductions for all but $90 (for each year) of the $29,525 and $28,596 of expenses petitioner reported on her 2008 and 2009 Schedules A, Itemized Deductions, respectively, for "Job Expenses and Certain Miscellaneous Deductions" (lines 21-24). These claimed amounts included tax preparation fees of $245 and depreciation of $2,764 for 2008 and a deduction for "other" of $4,808 for 2009. Petitioner has not addressed any of these three items, and we accordingly deem her to have conceded them to the extent they exceed the $90 respondent allowed for each year.

The notice of deficiency also determined that petitioner's filing status for each year at issue was "married filing separately" rather than "single" as claimed on her 2008 and 2009 returns. As petitioner has not addressed this issue, it is likewise deemed conceded.

(3) whether petitioner is entitled to deductions for unreimbursed employee business expenses for 2008 and 2009 in amounts greater than those allowed by respondent;

(4) whether petitioner is entitled to a deduction for moving expenses for 2009; and

(5) whether petitioner is liable for accuracy-related penalties for 2008 and 2009.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Tennessee.

Starting in April 2008 and continuing through the end of 2009 petitioner worked as a mechanical engineer for SunCoke Energy, a division of Sunoco, Inc. (Sunoco). During 2008 and 2009 petitioner maintained a residence outside Knoxville, Tennessee. During 2008 she commuted from that residence to a Sunoco office in Knoxville, but in 2009 her work responsibilities often required her to travel to other jobsites, principally a jobsite in the St. Louis, Missouri, area.

Sunoco had a written policy for reimbursing employees for their work-related expenses for the years at issue. Sunoco's reimbursement policy had

provisions covering, among other things, business travel, membership in professional and other organizations, clothing needed for weather or safety conditions, and meals with persons having business relationships with the company.

The policy's provisions covering lodging expenses provided that Sunoco would not reimburse "multiple hotel expenses on the same night stay for a single individual in more than one location". The policy's provisions covering expenses relating to an employee's profession provided that "[e]xpenses associated with membership * * * in professional, business, civic, and trade organizations can be reimbursed at * * * [Sunoco's] discretion". They also provided that "[Sunoco] will provide reimbursement for authorized subscriptions to periodicals and technical or scientific publications serving a business purpose, at * * * [Sunoco's] discretion."

Sunoco provided petitioner with an American Express credit card (corporate card) to use in paying business expenses. The Sunoco reimbursement policy required that the corporate card be used "whenever possible" for all business expenses incurred by an employee, including meals.

Petitioner filed timely Federal income tax returns for 2008 and 2009. On her 2008 return she reported adjusted gross income of $106,844 and claimed

deductions for medical expenses of $15,381 and unreimbursed employee business expenses of $26,516. On her 2009 return she reported adjusted gross income of $74,013 and claimed a deduction of $6,718 for moving expenses, a deduction of $2,034 for charitable contributions, and a deduction for $23,788 of unreimbursed employee business expenses. On her 2008 and 2009 tax returns she reported a Knoxville area post office box as her address.

Respondent subsequently mailed to petitioner a notice of deficiency with respect to her 2008 and 2009 taxable years. The notice disallowed Schedule A deductions that petitioner claimed for medical expenses for 2008, the charitable contribution deduction for 2009, and miscellaneous deductions, including the deductions for unreimbursed employee business expenses, for both years, as well as the moving expense deduction for 2009. The notice determined that petitioner was liable for accuracy-related penalties for both years.

Petitioner filed a timely petition with the Court seeking redetermination of the deficiencies.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111,

115 (1933). Deductions are a matter of legislative grace, and the burden of showing entitlement to a claimed deduction is on the taxpayer.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Medical Expenses

Petitioner claimed a deduction for medical expenses of $15,381 for 2008. Respondent allowed $11,016 of that amount in the notice of deficiency and conceded an additional $336 at trial, leaving $4,029 in dispute. Of the disputed amount, petitioner has addressed only a $569 expenditure for a bicycle and related accessories. While respondent concedes that petitioner spent $569 for a bicycle and related accessories, he contends that the expenditure does not qualify as a medical expense.

Petitioner testified that her physician determined that she had excessive adrenaline in her body and recommended that she exercise to alleviate the condition. She conceded that her physician did not recommend any particular method of exercise but testified that the bicycle could be set up on a stand in a hotel room and therefore provided a convenient means of exercising during her travels.

---

[3]Petitioner has not claimed or shown entitlement to any shift in the burden of proof pursuant to sec. 7491(a).

Section 213(a) as in effect for 2008 provided a deduction for expenditures for medical care of the taxpayer not compensated for by insurance or otherwise that exceed 7.5% of adjusted gross income.[4]  "Medical care" is defined in section 213(d)(1) to include expenditures for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body.  Section 213 carves out a limited exception to the general rule in section 262 that prohibits the deduction of personal, living, or family expenses.  Jacobs v. Commissioner, 62 T.C. 813, 818 (1974).  Section 1.213-1(e)(1)(ii), Income Tax Regs., provides that medical care deductions will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness.  These expenditures must satisfy a "but for" test:  the taxpayer must show that the expenditure was an essential element of the treatment and that it would not have been incurred for nonmedical reasons.  Jacobs v. Commissioner, 62 T.C. at 819.  Inquiries of this nature are primarily factual.  Id. (citing Stringham v. Commissioner, 12 T.C. 580, 584-585 (1949), aff'd per curiam, 183 F.2d 579 (6th Cir. 1950)).

---

[4]The adjusted gross income floor was raised to 10% for taxable years beginning after December 31, 2012.  See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 9013(a), 124 Stat. at 868.

Even accepting arguendo petitioner's contention that she had an excessive adrenaline condition, she has not shown that bicycle exercise was essential to the treatment of that condition. Indeed, she conceded that her physician's recommendation was for more exercise generally rather than bicycle riding specifically. She did not produce evidence indicating that she could not engage in other methods of exercise. Given the inherent recreational uses of a bicycle, we conclude that petitioner has not shown that the bicycle would not have been purchased "but for" her medical condition. Instead, we conclude that the expenditure was only beneficial to her health generally and therefore does not qualify as medical care. See France v. Commissioner, 690 F.2d 68, 69 (6th Cir. 1982) (finding physician-recommended dance lessons to alleviate arthritic pains and nervous tensions not medical care), aff'g T.C. Memo. 1980-215; Thoene v. Commissioner, 33 T.C. 62, 65 (1959) (finding physician-recommended dance lessons not medical care); Peacock v. Commissioner, T.C. Memo. 1978-30, 37 T.C.M. (CCH) 177, 184 (1978) (finding gym membership expense not medical care where physician recommended exercise). We therefore conclude that petitioner is not entitled to deduct medical expenses for 2008 in excess of those allowed by respondent.

Charitable Contributions

Petitioner claimed a deduction for charitable contributions of $2,034 for 2009. Respondent disallowed the entire deduction in the notice of deficiency but conceded $1,500 at trial, leaving $534 in dispute. Petitioner argues that this amount relates to her volunteer work on a Habitat for Humanity project. She testified that $314 pertained to vehicle expenses incurred in driving between St. Louis and Knoxville on multiple occasions to work on the project. She calculated her vehicle expenses using the 14-cent standard mileage rate under section 170(i). She testified that the remaining $220 in dispute pertained to the cost of meals that she purchased for other participants on this project.

Section 170(a)(1) allows a deduction for charitable contributions made during the taxable year "if verified under regulations prescribed by the Secretary." The contributions must be to or for the use of a qualifying organization. Sec. 170(c). Section 1.170A-1(g), Income Tax Regs., prohibits deductions for charitable contributions of services but allows deductions for "unreimbursed expenditures made incident to the rendition of services". Expenditures of this nature under $250 must be substantiated with written records that substantially comply with the requirements of section 1.170A-13(a)(1), Income Tax Regs. See Van Dusen v. Commissioner, 136 T.C. 515, 534-535 (2011). These documents

must be reliable evidence of the claimed expenses, such as check copies, bank account statements, and credit card statements.  See id. at 533-535.  Such expenditures of $250 or more must also be substantiated with a contemporaneous written statement from the donee organization containing, among other things, a description of the services that the taxpayer provided.  See id. at 536-537; sec. 1.170A-13(f)(10), Income Tax Regs.

Petitioner offered no documentation that would satisfy the foregoing requirements.  She offered only a spreadsheet that lists the amounts of the vehicle and meal expense deductions claimed, which she concedes she created when preparing her return.  She did not produce any receipts or other written records that would tend to corroborate that she made the trips in her vehicle as claimed or purchased the meals.  Without additional corroboration, the noncontemporaneous spreadsheet is not reliable evidence of her claimed expense deductions.  Additionally, she did not produce a written statement from Habitat for Humanity regarding the services she provided to substantiate her vehicle expense, which exceeded $250.  Having failed to satisfy the substantiation requirements of section 1.170A-13, Income Tax Regs., she is not entitled to a charitable contribution

deduction for either the vehicle expenses or the costs of meals.[5] We therefore conclude that petitioner has not shown entitlement to any charitable contribution deduction for 2009 in excess of that allowed by respondent.

Employee Business Expenses

Overview

Petitioner claimed deductions for $26,516 and $23,788 of unreimbursed employee business expenses for 2008 and 2009, respectively. As detailed in the Forms 2106, Employee Business Expenses, attached to her returns, the expenses reported consisted of: vehicle expenses; travel expenses while away from home overnight; "other" employee business expenses; meals and entertainment expenses; and, in the case of 2009 only, transportation expenses. Respondent disallowed deductions for all of these expenses for each of the years. At trial respondent conceded $1,200 and $1,112 of these expenses for 2008 and 2009, respectively, leaving $25,316 and $22,676 in dispute, respectively.

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business, including

_____

[5]Even if petitioner had substantiated her meal purchases, they would be more accurately characterized as nondeductible gifts to petitioner's covolunteers rather than meals "necessarily incurred" by petitioner while performing donated services. See Cavalaris v. Commissioner, T.C. Memo. 1996-308, 1996 WL 380695, at *8-*9.

expenses paid or incurred as an employee. <u>Lucas v. Commissioner</u>, 79 T.C. 1, 6 (1982). The taxpayer cannot deduct such expenses, however, to the extent the taxpayer is entitled to reimbursement from the employer for an expenditure related to the taxpayer's status as an employee. <u>See</u> <u>id.</u> at 7; <u>Spielbauer v. Commissioner</u>, T.C. Memo. 1998-80, 1998 WL 78983, at *3-*4 (stating that ordinary and necessary educational expenses deductible to the extent they exceeded the amount that taxpayer was entitled to be reimbursed from employer). Deductions for such expenses belong to the employer. <u>See</u> <u>Kennelly v. Commissioner</u>, 56 T.C. 936, 943 (1971), <u>aff'd without published opinion</u>, 456 F.2d 1335 (2d Cir. 1972). The taxpayer bears the burden of proving that the taxpayer was not entitled to reimbursement from the employer for such expenses. <u>See</u> <u>Fountain v. Commissioner</u>, 59 T.C. 696, 708 (1973). The taxpayer can prove that he was not entitled to reimbursement by, for example, showing that he was expected to bear these costs. <u>See</u> <u>id.</u>; <u>Dunkelberger v. Commissioner</u>, T.C. Memo. 1992-723, 1992 WL 379282, at *1 (finding that management team expected taxpayer to bear expense of business lunches with vendors). Where the taxpayer's employer has a reimbursement policy that covers the expenses, the taxpayer must show that he sought reimbursement from his employer for the expenses. <u>Orvis v. Commissioner</u>, 788 F.2d 1406, 1408 (9th Cir. 1986), <u>aff'g</u> T.C. Memo. 1984-533.

Where a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction to which he may be entitled, we may in certain circumstances estimate the amount allowable. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). But for expenses subject to the more stringent substantiation requirements of section 274(d), the Cohan rule may not be used. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Vehicle Expenses

2008

Petitioner has not addressed the $15,528 of vehicle expenses for which she claimed a deduction for 2008. We accordingly find that she has conceded them and sustain respondent's disallowance thereof. See Rule 34(b)(4).

2009

Petitioner claimed a deduction for vehicle expenses of $7,405 for 2009, all of which respondent disallowed.

Petitioner testified that she incurred these expenses in connection with round trip travel between various Sunoco jobsites and her Knoxville residence.

She testified that Sunoco would reimburse her for these round trips only if they occurred at times that Sunoco designated for traveling home, typically every other weekend. According to petitioner, however, her responsibilities at these jobsites, which involved checking on safety conditions when most workers were not on the site, often required her to work on weekends. Consequently, some of her trips home would occur at times other than the designated weekend times and thus were ineligible for reimbursement, according to petitioner. She testified that the vehicle expenses she claimed arose from such travel. As substantiation for this travel, petitioner produced a spreadsheet that she conceded she created when preparing her return.

An employee may be entitled to deduct as a business expense the cost of travel between her residence and a temporary jobsite. See sec. 162(a)(2); Mitchell v. Commissioner, T.C. Memo. 1999-283, 1999 WL 669954, at *4-*5. However, business use of a passenger automobile is subject to the substantiation requirements of section 274(d) because such a vehicle is "listed property" as defined in section 280F(d)(4)(A)(i). For such automobile expenses, a taxpayer must substantiate, by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expenditure; (2) the mileage for each business use of the automobile; (3) the date of the business use; and (4) the

business purpose of the use. <u>See</u> sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Petitioner has not satisfied the substantiation requirements of section 274(d). The spreadsheet and petitioner's testimony regarding the vehicle expenses are not sufficient to establish each element above. Petitioner did not produce any documentary evidence that would tend to corroborate the spreadsheet entries or offer testimony regarding what she relied upon to create the entries.

Even aside from her failure to satisfy section 274(d), petitioner has not corroborated her testimony that Sunoco's reimbursement policy for trips home was confined to weekend travel. Sunoco's written reimbursement policy for automobile use contained no such provision, and petitioner has not produced correspondence with or testimony from a supervisor that would corroborate this feature of Sunoco's reimbursement policy. <u>See</u> <u>Kessler v. Commissioner</u>, T.C. Memo. 1985-254, 49 T.C.M. (CCH) 1565, 1570-1571, n.9 (1985) (noting that taxpayer called his supervisor as witness). We conclude that petitioner has failed to show she was not entitled to reimbursement of these vehicle expenses.

Because petitioner has not satisfied the substantiation requirements of section 274(d) or shown that she was not entitled to reimbursement, we sustain

respondent's disallowance of the vehicle expense deductions she claimed for 2009.

Travel Expenses While Away From Home Overnight

2008

Petitioner reported $2,140 of unreimbursed employee business expenses for travel while away from home overnight on line 3 of her 2008 Form 2106, all of which respondent disallowed.

To substantiate these expenses, petitioner produced a spreadsheet that she conceded she created when preparing her 2008 return, as well as receipts corresponding to the spreadsheet entries.

As indicated by the proffered receipts, approximately $1,348 of the disputed amount is for hotel lodging in various cities. Petitioner testified that Sunoco's reimbursement policy provided reimbursement for only one lodging expense per night and that she often incurred two lodging expenses for a given evening when Sunoco required her to travel from one jobsite to another on short notice. While Sunoco's reimbursement policy tends to corroborate petitioner's claim,[6] we nonetheless reject the claimed deduction for lodging expenses for 2008 because

[6]As noted previously, the policy stated that Sunoco would not reimburse "multiple hotel expenses on the same night stay for a single individual in more than one location".

petitioner did not provide any corroborating evidence that she paid for a hotel room in more than one location on the same evening at any time in 2008. She did not provide, for example, receipts for hotel charges from two hotels for the same evening or correspondence with Sunoco management regarding these expenses. Thus, she has not provided competent evidence that any of the overnight lodging expenses she claimed for 2008 would trigger the exclusion from reimbursement under Sunoco's reimbursement policy. We decline to accept petitioner's self-serving testimony without additional corroboration. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Consequently, we conclude that petitioner has failed to show that she was not eligible for reimbursement for these expenses. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708.

As indicated by the proffered receipts, an additional $773 of the disputed amount is for round trip airfare between Knoxville and Cleveland, Ohio. Petitioner offers no explanation as to why, if this flight was taken in connection with her duties at Sunoco, she was not reimbursed for it, given that Sunoco's policy provided for such reimbursement. In the absence of further evidence, we reject petitioner's claim. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708.

The remaining receipts consist of a $5 expense at a newsstand for "magazines" and a $14 expense for a passport photograph. The magazines are a nondeductible personal expense, as is the passport-related expense. See Baratelle v. Commissioner, T.C. Memo. 2000-359, 2000 WL 1732434, at *6.[7]

In sum, we conclude that petitioner has not shown entitlement to a deduction for any of the $2,140 of expenses claimed for overnight travel for 2008. Accordingly, we sustain respondent's disallowance of these expenses.

### 2009

Petitioner reported $3,398 of unreimbursed employee business expenses for travel while away from home overnight on line 3 of her 2009 Form 2106 and an additional $584 on line 2, purportedly for local transportation.[8] Respondent

---

[7]But see Payne v. Commissioner, T.C. Memo. 1986-93, 51 T.C.M. (CCH) 579, 582 (1986) (concluding on the facts of that case that a passport fee is a deductible business expense).

[8]Although petitioner reported $584 on line 2 of the Form 2106 as expenses for parking fees, tolls, and transportation, an examination of her supporting receipts reveals that the expenditures were all related to travel while away from home. This figure includes a total of $310 from hotel invoices for lodging, parking, and Internet service that will be considered with the associated lodging expenses.

disallowed all of the foregoing. As substantiation, petitioner produced spreadsheets she concedes she created when preparing her return and receipts corresponding to the spreadsheet entries.[9]

Our analysis for petitioner's 2009 travel expense deduction claims is similar to that for 2008. Approximately $2,895 of the receipts are for hotel lodging (and associated expenses such as hotel parking and Internet service) in various cities. Petitioner offered the same explanation for Sunoco's not reimbursing her for these lodging expenses as she offered for her 2008 lodging expenses; that is, that Sunoco reimbursed her for only one lodging expense per night. Here again, however, the lodging expense receipts that petitioner proffered fail to demonstrate any instance where she incurred two lodging expenses for the same night. She did not produce other evidence to corroborate her explanation, such as correspondence with Sunoco management about these expenses. Consequently, we find that petitioner has failed to show that she was not eligible for reimbursement for the $2,895 of lodging expenses for which she claimed a deduction for 2009. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708.

The remaining travel expenses for which petitioner claimed a deduction consist of $593 for a rental car used in Montreal (which petitioner contends was

---

[9]The receipts total $585, a difference we treat as de minimis.

the location of a Sunoco jobsite) and $221 for a rental car originating in Knoxville that petitioner contends was for trip to a Sunoco facility in New Albany, Indiana. In contrast to her testimony regarding the lodging expenses, petitioner offers no explanation as to why Sunoco would not reimburse for rental cars used in these circumstances. Sunoco's written reimbursement policy provided for such reimbursement. In the absence of additional evidence, we conclude that petitioner has not shown that she was not entitled to reimbursement. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708.

With respect to the remaining $274 for which petitioner claimed a transportation expense deduction, the substantiating receipts show expenditures that are properly characterized as expenses for overnight travel: a $254 car rental from March 19-20 in Wichita, Kansas; a $20 parking fee at the Knoxville airport on March 20; and a $1 highway toll in Illinois on September 6. Given the date overlap between the Wichita car rental and the Knoxville airport parking fee, we infer that petitioner flew from Knoxville to Wichita on March 19 and returned March 20. Accepting petitioner's testimony that Wichita was one of the Sunoco jobsites to which she was assigned, we conclude that the March travel to Wichita was work related. Here again, however, petitioner offered no explanation for Sunoco's not reimbursing her for any of the foregoing expenses even though

Sunoco's written reimbursement policy provided for it. We therefore sustain respondent's disallowance of these expenses. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708.

We accordingly sustain respondent's disallowance of the $3,398 and $584 for which petitioner claimed deductions as overnight travel and local transportation expenses, respectively, for 2009.

"Other" Employee Business Expenses

2008

Petitioner reported $7,400 on line 4 of her 2008 Form 2106 for "other" employee business expenses. The notice of deficiency disallowed the deduction for the expenses in full, but respondent conceded $1,200 of the expenses at trial, leaving $6,200 of the expenses in dispute.

Petitioner testified that $280 of the disputed amount pertained to steel-reinforced metatarsal boots that Sunoco required all personnel to wear on jobsites. She produced a receipt to substantiate the purchase, but the receipt indicates that the $280 claimed was split between a boots purchase of $142 and a coveralls purchase of $138 (allocating the sales tax proportionally). Petitioner testified that the steel reinforcement in the boots ran above the ankle and that the boots were required for safety on jobsites. She testified that she requested reimbursement

from Sunoco but was denied it because the company believed reimbursing her would require it to reimburse all contractors at its jobsites as well. Sunoco's reimbursement policy, however, stated that the cost of work-related clothing needed for "weather/safety conditions" was reimbursable.

The cost of clothing is deductible as an employee business expense only if the clothing is required for the taxpayer's employment, unsuitable for general wear, and not worn for personal use. Kinney v. Commissioner, T.C. Memo. 2008-287, 2008 WL 5330815, at *9 (citing Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980), and Yeomans v. Commissioner, 30 T.C. 757, 767 (1958)). The clothing must be unsuitable for use outside of the taxpayer's work environment and not actually used outside of that environment. See Kinney v. Commissioner, 2008 WL 5330815, at *9.

We are satisfied that petitioner has shown entitlement to deduct the cost of the boots. We readily accept the boots' safety purpose and their required use on job sites as plausible. It is clear the boots are not suitable for other purposes, and we accept petitioner's plausible testimony that Sunoco refused reimbursement out of concern that it not incur an obligation to purchase similar boots for others (notwithstanding the formal terms of Sunoco's reimbursement policy for safety-

related clothing). We therefore conclude that petitioner has shown entitlement to a deduction for an "other" employee business expense of $142 for the boots.

As for the coveralls, petitioner testified that they were fire-retardant clothing that she needed for work on jobsites. But the receipt does not indicate that the coveralls were fire retardant. In contrast to her testimony regarding the boots, petitioner has not shown that the coveralls were unsuitable for general wear and not worn for personal use. See id. She also failed to address whether she was entitled to reimbursement for the coveralls. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708. Accordingly, petitioner has not shown entitlement to an employee business expense deduction for the coveralls.

Petitioner has not addressed the remaining $5,920 of "other" employee business expenses for which she claimed a deduction for 2008. We accordingly find that she has conceded them.

We conclude that petitioner is not entitled to claim a deduction for "other" employee business expenses for 2008 in excess of the amount allowed by respondent, plus the $142 expense for boots that we have concluded petitioner is entitled to deduct.

2009

Petitioner reported $11,528 on line 4 of her 2009 Form 2106 for "other" employee business expenses. The notice of deficiency disallowed them in full, but respondent conceded $1,112 of them at trial, leaving $10,416 in dispute.

Petitioner testified that $1,319 of the disputed amount pertained to fire-retardant clothing and a special safety harness that she needed for work on jobsites. While petitioner produced receipts for these items totaling $1,319, she offered no testimony concerning any refusal by Sunoco to reimburse her for the expenditures.

The receipts in question show purchases of clothing including shoes, a jacket, and coveralls totaling $793 but do not indicate that any of the clothing was fire retardant. As with the coveralls expense she reported for 2008, petitioner has not shown that this clothing was unsuitable for general wear and not worn for personal use. See Kinney v. Commissioner, 2008 WL 5330815, at *9. Additionally, petitioner has not addressed whether she was entitled to reimbursement for the clothing. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708. Accordingly, petitioner has not shown entitlement to deduct the clothing purchases.

As for the safety harness, the receipts do not show such a purchase. As best we can tell, the harness could be represented by only two receipts of purchases of unspecified items from "W.W. Granger" totaling $525, one for $454 and one for $71. Even if we were to accord petitioner the benefit of the doubt on her substantiation, given the apparent safety purpose served by the harness--which would bring it within the clear terms of Sunoco's reimbursement policy--her failure to explain the circumstances of Sunoco's not reimbursing her persuades us that she has failed to show that she did not receive reimbursement. See Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708.

Petitioner testified that $349 of the disputed "other" employee business expenses pertained to membership fees for the American Welding Society and the American Society of Mechanical Engineers and an American Society of Mechanical Engineers publication. She produced receipts to substantiate these expenditures. Petitioner testified that Sunoco did not reimburse her.

Given that Sunoco retained discretion as to whether it would reimburse the foregoing expenses,[10] we are satisfied on this record that petitioner was not

_____

[10]As noted previously, Sunoco's reimbursement policy provided that "[e]xpenses associated with membership * * * in professional, business, civic, and trade organizations can be reimbursed at * * * [Sunoco's] discretion". Sunoco's reimbursement policy also provided that "[Sunoco] will provide reimbursement

(continued...)

reimbursed, and the business purpose is apparent. We therefore conclude that petitioner has shown entitlement to a deduction for $349 of "other" employee business expenses beyond those respondent allowed.

The "other" employee business expenses in dispute also include $1,763 petitioner spent for tickets to Bristol Motor Speedway.[11] Petitioner testified that she used the tickets to take her supervisor to the races for "comradery" and conceded that she had not sought reimbursement from Sunoco. Expenditures for sporting event tickets or drinks merely to foster camaraderie among coworkers lack a business purpose under section 162, see Finney v. Commissioner, T.C. Memo. 1980-23, 39 T.C.M. 938, 949-950 (1980); Brenner v. Commissioner, T.C. Memo. 1967-239, 26 T.C.M. (CCH) 1210, 1216 (1967), unless, possibly, the purpose is to facilitate acquaintances with new coworkers, a contention not made here, see Moss v. Commissioner, 758 F.2d 211, 213 (7th Cir. 1985), aff'g 80 T.C. 1073 (1983). We therefore sustain respondent's disallowance of a deduction for this expenditure.

---

[10](...continued)
for authorized subscriptions to periodicals and technical or scientific publications serving a business purpose, at * * * [Sunoco's] discretion."

[11]Expenses of this nature are properly reported as meals and entertainment expenses on Form 2106 line 5. Petitioner treated other Bristol Motor Speedway ticket expenses as meals and entertainment expenses, discussed infra.

Also included in the disputed "other" employee business expenses is a $214 expense for a power adapter that petitioner testified she needed to power her laptop computer[12] when a power outlet was unavailable at jobsites. However, the receipt substantiating the purchase of the power adapter is dated December 26, 2008, indicating that this expense would be deductible for 2008 if at all. See sec. 1.461-1(a), Income Tax Regs. In any event, as petitioner has not addressed whether she was eligible for reimbursement or sought it, she has not shown entitlement to this deduction for either year. See Fountain v. Commissioner, 59 T.C. at 708.

Finally, although petitioner produced two receipts indicating that she made expenditures totaling $62 for "business services" at a UPS Store and a "16GB SDCARD", she did not offer any testimony or other evidence to support their business purpose. We accordingly deem them conceded.

This leaves $6,709 of disputed "other" employee business expenses that petitioner has not addressed. We accordingly deem them conceded.

---

[12]The record is silent as to whether the laptop was petitioner's or Sunoco's property.

We conclude that petitioner has shown entitlement to deduct an additional $349 in "other" employee business expenses for 2009 beyond the amount allowed by respondent.

Meals and Entertainment Expenses

Petitioner reported $1,448 and $873 for meals and entertainment expenses on line 9 of her 2008 and 2009 Forms 2106, respectively, all of which respondent disallowed.

As substantiation, petitioner produced spreadsheets (that she created when preparing her returns) and receipts covering $5,793 of meals and entertainment expenses for 2008 and $3,491 for 2009. Petitioner produced 49 receipts totaling $2,841 for meal expenses for 2008 and 59 receipts totaling $2,701 for meal expenses for 2009. The remaining $2,951 and $790 of receipts for 2008 and 2009, respectively, were for Bristol Motor Speedway tickets.

Meals and entertainment expenses are subject to a 50% limitation prescribed by section 274(n). They are also subject to the substantiation requirements of section 274(d). See sec. 1.274-5T(b)(2) and (3), (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985). A taxpayer must substantiate, by adequate records or by sufficient evidence corroborating the taxpayer's own statement, several elements including the business purpose of the meal and the

business relationship between the meal attendees and the taxpayer. As with other employee business expenses, the taxpayer must also show that he was not entitled to reimbursement for them. See Fountain v. Commissioner, 59 T.C. at 708.

Sunoco's written reimbursement policy provided with respect to business meals that the expenses would be reimbursed if incurred in connection with meeting persons having a business relationship with the company. The policy also required that the corporate card be used to pay for business meals "whenever possible".

Petitioner testified that the unreimbursed meal expenses for which she claimed deductions arose from after-hours working dinners with contractors hired by Sunoco with whom petitioner worked. According to petitioner, Sunoco encouraged her to facilitate these after-hours meals with the contractors to expedite project completion. Petitioner testified that she submitted reimbursement requests to Sunoco and they were denied, which she attributed to a Sunoco policy prohibiting reimbursement for meals provided to contractors to whom Sunoco was paying a per diem.

The difficulty with petitioner's contention is that only 3 of the 49 meal receipts for 2008 and 5 of the 59 meal receipts for 2009 conform with her "after hours" description and the reimbursement policy requirement that they be charged

on the corporate card (which was an American Express card); that is, only eight of the receipts petitioner proffered to substantiate her meal expenses establish that the charges were on an American Express card at an "after hours" time. The remaining 46 and 54 receipts for 2008 and 2009, respectively, establish that they were not charged on an American Express card[13] or incurred "after hours".[14]

Since the eight receipts evidencing "after hours" American Express-charged meals corroborate petitioner's testimony, we conclude that she has satisfied the section 274(d) substantiation requirements for these expenses. The meal expenses on the three such receipts for 2008 total $469, and the meal expenses on the five for 2009 total $316. We also accept petitioner's explanation for Sunoco's not reimbursing her for these meals, as she could well have been unaware which contractors were receiving per diem payments from Sunoco. We accordingly find

---

[13]The bulk of these receipts demonstrates that the meals were charged on a credit card other than American Express, while a few do not indicate whether a credit card was used for payment. The fact that petitioner did not charge the bulk of these meals on the corporate card as required by Sunoco's reimbursement policy independently supports an inference that the meals were personal. Moreover, in 11 instances the payor on the receipt was not petitioner but "David Kozak" (presumably her spouse at the time), further suggesting that these meals were personal.

[14]The bulk of the receipts establishes that the meals occurred during business hours. In a few instances, the receipts do not establish the time of the meal.

that petitioner is entitled to deduct additional employee business expenses beyond those allowed by respondent of 50% of $469 and $316 for 2008 and 2009, respectively.

As for the remaining meal receipts for each year, petitioner has not produced sufficient evidence to corroborate her own statement regarding the business purpose of these meals; that is, that they were after-hours working dinners. Indeed, most of the receipts contradict petitioner's testimony. Consequently, she has not satisfied the substantiation requirements of section 274(d) for any of them.

With regard to the Bristol Motor Speedway tickets,[15] although petitioner produced receipts documenting the purchases (of $2,951 and $790 for 2008 and 2009, respectively), she did not address them and, accordingly, she is not entitled to deductions for any portions of them as employee business expenses.

Moving Expenses

Petitioner claimed a moving expense deduction of $6,718 on her 2009 tax return which was disallowed in the notice of deficiency.

---

[15]Petitioner reported another purchase of such tickets, for $1,763, as an "other" employee business expense on line 4 of her 2009 Form 2106. We considered that claim previously.

To substantiate her claim, petitioner produced receipts totaling $5,015[16] as follows: (1) $2,397 for three months of lodging at an extended stay facility near St. Louis for April, May, and July 2009;[17] (2) $811 for two separate hotel stays in St. Louis, each for a few evenings, in February 2009; (3) $257 for three months of storage unit fees for a unit near her Knoxville residence; and (4) $1,550 for a car rental from April 1 to April 15.

Petitioner testified that Sunoco transferred her to a St. Louis jobsite in January 2009 to work on a project and that St. Louis was her base of operations for the remainder of 2009. She testified that she anticipated returning to Knoxville once the St. Louis project was complete.

Section 217(a) allows a taxpayer to deduct moving expenses that arise in connection with the commencement of work by the taxpayer as an employee at a "new principal place of work." The taxpayer must show that his employment at the new principal place of work was permanent or indefinite rather than temporary. See Goldman v. Commissioner, 497 F.2d 382, 383 (6th Cir. 1974),

---

[16]We treat petitioner as having conceded her moving expense deduction to the extent it exceeded $5,015.

[17]Petitioner reported the April, May, and July extended stay charges as moving expenses but included some of the June, August, and September charges from the same facility in her unreimbursed travel expenses while away from home overnight.

aff'g T.C. Memo. 1973-132; Schweighardt v. Commissioner, 54 T.C. 1273, 1277 (1970); Davis v. Commissioner, T.C. Memo. 1979-47, 38 T.C.M. (CCH) 189, 192 (1979).

Under section 217(b)(1), "moving expenses" are defined as a taxpayer's reasonable expenses of moving his belongings from his former residence to his new residence and of traveling (including lodging) from his former residence to his new residence. Moving expenses do not include the cost of lodging at the new principal place of work. See Work v. Commissioner, T.C. Memo. 2005-259, 2005 WL 2885850, at *3 (explaining that the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, sec. 13213(a)(1), 107 Stat. at 473, removed all allowances for temporary lodging).

The evidence in the record shows that St. Louis was not a permanent or indefinite place of employment for petitioner. She conceded in her testimony that she planned to return to Knoxville once the St. Louis project was finished, indicating the temporary nature of the assignment. Moreover, petitioner reported a Knoxville post office box as her address on her timely 2009 tax return, indicating that she anticipated returning to Knoxville or actually had done so when she filed her return in 2010.

In addition, none of the expenses petitioner substantiated qualify as moving expenses under section 217(b). As for the lodging charges, she cannot deduct such charges at the new location as moving expenses. See id., 2005 WL 2885850, at *3. She failed to show that the property she stored near her Knoxville residence was actually moved to St. Louis. See id. at *4. The fact that the car rental was for two weeks indicates that petitioner used the rental car for purposes other than moving her belongings between Knoxville and St. Louis.

Because petitioner has not shown that her employment in St. Louis was permanent or indefinite and because none of the expenses petitioner substantiated qualify as moving expenses under section 217(b), we sustain respondent's disallowance of petitioner's moving expense deduction.

Accuracy-Related Penalties

Respondent determined accuracy-related penalties under section 6662(a) for 2008 and 2009. Respondent argues that petitioner is liable for these penalties because of negligence and a substantial understatement of income tax. See sec. 6662(b)(1) and (2). Petitioner disputes her liability for the penalties.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of an underpayment of tax required to be shown on a return that is attributable to a substantial understatement of income tax or to negligence. An "underpayment of

tax" for this purpose is defined as the excess of the amount of income tax imposed over the sum of the amount of tax shown as the tax by the taxpayer on his return and any tax previously assessed (or collected without assessment), less any rebate. Sec. 6664(a). An "understatement" is the excess of the amount of tax required to be shown on a return over the amount of tax shown on the return less any rebate. Sec. 6662(d)(2)(A). An understatement is substantial when it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

For purposes of the accuracy-related penalty, "negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence includes any failure to exercise ordinary and reasonable care in the preparation of a tax return or any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

However, no penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith

is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id. An honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. Id.

Negligence or Disregard of Rules and Regulations

2008

Petitioner had reasonable cause with respect to the portion of her 2008 underpayment attributable to her $569 medical expense deduction claim for the bicycle and related accessories. Respondent conceded that petitioner purchased them, we found her testimony regarding her physician's recommendation credible, and her belief that she could deduct them as a medical expense was reasonable in the circumstances. Accordingly, petitioner is not liable for an accuracy-related penalty on the portion of her underpayment attributable to that deduction.

Regarding the other deductions for expenses for which we sustained the disallowance, petitioner did not even defend almost $28,000[18] of them; that is, she offered no argument or substantiation whatsoever. These expenses amount to approximately 82% of the $33,800 of deductions for expenses that respondent disallowed for 2008 in the notice of deficiency.[19] Her negligence with respect to these deductions is patent. As for the remaining $3,257, for which petitioner offered some documentation or testimony,[20] her evidence fell woefully short of establishing entitlement to the deductions claimed, as our previous discussion indicates. This means that petitioner could not substantiate approximately $31,000 of the deductions she claimed for 2008 and had no support whatsoever for approximately $28,000 of them. Given the size of these figures in relation to her income, we conclude that petitioner failed to exercise reasonable care in preparing her return and failed to keep adequate substantiation. Imposition of a section

---

[18]This amount consists of the unaddressed tax preparation fees and depreciation, see supra note 2, and the unaddressed medical expenses, vehicle expenses, and "other" employee business expenses.

[19]This amount consists of the expenses on Schedule A for which a deduction was disallowed, see supra note 2, and the medical expenses for which a deduction was disallowed.

[20]This amount consists of the expenses for lodging, coveralls, airfare, magazines, and meals and passport-related expenses.

6662(a) penalty on the basis of negligence with respect to the 2008 underpayment is therefore warranted.

2009

With respect to the 2009 deductions for which we have sustained disallowance, we similarly conclude that petitioner was negligent in claiming them.

Petitioner's claims of a moving expense deduction and a deduction for an unreimbursed employee business expense for Bristol Motor Speedway tickets evince a failure to exercise reasonable care in the preparation of her tax return. A reasonable person would have ascertained that deductions for the purported moving expenses and the Speedway tickets were well outside the bounds of sections 217 and 162, respectively, and would not have claimed them.

For the remaining disallowed deductions, petitioner failed to make a reasonable attempt to comply with substantiation requirements. She offered no substantiation or even explanation for approximately $13,000 of the expenses for which she claimed deductions,[21] or approximately 35% of the expenses for which

---

[21]This amount consists of the unaddressed "other" expense, see supra note 2, and the unaddressed moving expenses and "other" employee business expenses.

she claimed deductions that respondent disallowed for 2009.[22]  For the remainder, her substantiation was sorely lacking, as discussed previously.  Given the size of the these figures in relation to her income, we conclude that petitioner failed to exercise reasonable care in preparing her return and failed to keep adequate substantiation.  Imposition of a section 6662(a) penalty on the basis of negligence with respect to the 2009 underpayment is therefore warranted.

Substantial Understatement of Income Tax

Alternatively, to the extent that the Rule 155 computations show that the understatement of tax for 2008 or 2009 exceeds the greater of 10% of the tax required to be shown on the return or $5,000, see sec. 6662(d)(1)(A), petitioner is liable for a section 6662(a) penalty for an underpayment of tax attributable to a substantial understatement of income tax.

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[22]The denominator of this percentage consists of the disallowed expenses claimed on Schedule A, see supra note 2, and the disallowed charitable contributions and moving expenses.